UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAYRA I. REYES CUBANO, | : | CIVIL NO: 1:20-CV-01927 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, *Acting* | : | |
| *Commissioner of Social Security*,[1] | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

**I. Introduction.**

This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Omayra I. Reyes Cubano ("Cubano"), seeks judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying her

claims for disability insurance benefits and supplemental security income under

Titles II and XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C.

§§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is
automatically substituted as the defendant in this action. *See* Fed. R. Civ. P.
25(d) (providing that when a public officer sued in his or her official capacity
ceases to hold office while the action is pending, "[t]he officer's successor is
automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted
in accordance with this subsection shall survive notwithstanding any change in the
person occupying the office of Commissioner of Social Security or any vacancy in
such office.").

decision will be affirmed, and judgment will be entered in favor of the Commissioner.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 13-1* to *13-12*.[2]  On January 3, 2019, Cubano protectively filed[3] applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since October 30, 2018. *Admin. Tr.* at 210–25.  After the Commissioner denied her claim at the initial level of administrative review, Cubano requested an administrative hearing. *Id.* at 106–07.  And on January 23, 2020, with the assistance of counsel, she testified at a hearing before Administrative Law Judge ("ALJ") Randy Riley. *Id.* at 40–62.

---

[2]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Cubano's claims.

[3]  "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, Cubano's applications are dated January 31, 2019. *See Admin. Tr.* at 210–25.  But there are references in the record to the filing date as January 3, 2019. *Id.* at 64, 75, 85–86.  And January 3, 2019, is the date identified by the ALJ as the date that Cubano protectively filed her applications. *Id.* at 23.

The ALJ determined that Cubano had not been disabled from October 30, 2018 (the alleged onset date), through February 6, 2020 (the date of the decision). *Id*. at 24, 33–34.  And so, he denied Cubano benefits. *Id*.  Cubano appealed the ALJ's decision to the Appeals Council, which denied her request for review on August 20, 2020. *Id.* at 1–8.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In October of 2020, Cubano, through counsel, began this action by filing a complaint claiming that the Commissioner's decision is not in accordance with the law and is not supported by substantial evidence. *Doc. 1* ¶¶ 16–27.  She requests that the court reverse the Commissioner's decision, award benefits, and grant her other relief that may be justified, such as attorney's fees. *Id.* at 6 (Wherefore Clause).

The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs. 12, 13.*  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 11.*  The parties then filed briefs, *see docs. 16, 19*, and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Cubano was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

---

[4]  "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Cubano met the insured-status requirements through March 31, 2020. *Admin. Tr.* at 23, 25.

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On February 6, 2020, the ALJ denied Cubano's claims for benefits. *Admin. Tr.* at 33–34.  At step one of the sequential-evaluation process, the ALJ found that Cubano had not engaged in substantial gainful activity since October 30, 2018, her alleged onset date. *Id.* at 25.

At step two of the sequential-evaluation process, the ALJ found that Cubano had the following severe impairments: fibromyalgia, degenerative disorders of the

spine, obesity, and bilateral carpal tunnel syndrome. *Id.* The ALJ also noted that Cubano alleges disability due to anemia, inflammatory arthritis, stomach pain, and "several other minor disorders," but he concluded that those impairments are either not medically determinable or medically determinable but not severe. *Id.* at 26.

At step three of the sequential-evaluation process, the ALJ found that Cubano did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 27–28. More specifically, the ALJ discussed Listing 1.04 in connection with Cubano's spinal disorder. *Id.* at 27. Regarding Cubano's obesity, the ALJ noted that her Body Mass Index is consistent with mild to moderate obesity, but determined that based on Cubano's medical records and opinion evidence, it was not equal to a medically listed impairment. *Id.* (citations to the record omitted). The ALJ opined that there is not a listing for fibromyalgia, but he nonetheless considered "all applicable listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and determined that Cubano's fibromyalgia was not equal to a medically listed impairment. *Id.* at 27–28. And in connection with Cubano's carpal tunnel syndrome, the ALJ considered Listings 1.02 and 11.14. *Id.* at 28. The ALJ determined that Cubano did not meet any of those listings. *Id.* at 27–28.

The ALJ then determined that Cubano has the RFC to perform light work[5] with some limitations. *Id.* at 28–32.  She is limited to standing and/or walking for only four hours total in an eight-hour workday and only occasionally handling and fingering bilaterally. *Id.* at 28.

In making this RFC assessment, the ALJ reviewed Cubano's assertions and testimony regarding her impairments and limitations.  He noted that she claims to be disabled "due to mixed physical disorders, including degenerative disc disease of the lumbar spine, fibromyalgia, obesity, and carpal tunnel syndrome." *Id.* at 29. "Her primary symptom allegations are progressively worsening bilateral hand pain, back pain, and knee pain; she also reports dizziness, nausea, and drowsiness as side effects of her prescription medication." *Id.* (citations to the record omitted).  And he noted that secondary to the listed disorders, symptoms, and side effects, Cubano "alleges she has significant difficulty lifting, sitting, standing, walking, squatting, bending, reaching, kneeling, climbing, using her hands, completing tasks,

---

[5]  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

concentrating, remembering, understanding, following instructions, handling

stress, and handling changes in routine." *Id.* (citations to the record omitted).

Cubano further alleges that most of her day is spent lying down due to pain. *Id.*

(citations to the record omitted).  The ALJ also noted that Cubano reported that she

"requires the use of hand braces, depends on assistance from others for heavy

household chores and other activities of daily living, cannot count change or

otherwise manage finances, and has become less social due to her impairments."

*Id.*  And the ALJ noted Cubano's allegations that she "cannot walk, stand, or sit

more than five minutes at one time, has increased pain with squatting, bending, and

climbing stairs, cannot climb ladders, has difficultly gripping and holding items

with her hands, and experiences three to four bad days per week when her pain is

even more extreme and limiting." *Id.*

    The ALJ also considered Cubano's daily activities.  In this regard, he

observed that Cubano "retains the exertional and non-exertional capacity to attend

to most personal care tasks independently." *Id.* at 30.  She can "live with and

provide some care for her family" and "take medications without reminders,

prepare simple meals, and complete light household chores." *Id.* (citations to the

record omitted).  And she testified that she can drive "short distances as needed,

shop in stores with others, watch television, play video games with her children,

and listen to music as leisure activities, generally get along with authority figures,

11

friends, family, neighbors, and others, and ambulate without the use of a cane or similar assistive device." *Id.* (citations to the record omitted).

The ALJ also reviewed Cubano's treatment records.  He recognized that "the record documents chronic pain complaints, with lumbar spondylosis, fibromyalgia, and carpal tunnel syndrome established well prior to the alleged onset date in the setting of obesity." *Id.* (citations to the record omitted).  He noted, however, that "objective testing for the lumbar spine and upper extremities is consistent with only mild to moderate underlying disorders, with no evidence of central canal stenosis or serious nerve root compression, as one would expect in light of the claimant's pain allegations." *Id.* (citations to the record omitted).  He further noted that Cubano's weight was "indicative of only mild to moderate obesity." *Id.* (citations to the record omitted).  He also reported that Cubano's treatment "has remained routine and conservative," which conservative treatment, he concluded, was not consistent with Cubano's allegations regarding the severity of her symptoms. *Id.* (citations to the record omitted).  Cubano "has refused or not complied with multiple forms of treatment, . . . [and] such noncompliance tends to undermine the persuasiveness of her pain complaints." *Id.* (citations to the record omitted).  The ALJ noted that Cubano's presentation on examination is not consistent with her pain allegations:

> The claimant consistently complains of 10/10 pain, dermal hypersensitivity throughout her entire body to any type of external

12

> stimulation, and full body feelings of weakness and fatigue, but also
> often presents with inconsistent facial posturing and movement
> patterns, appearing well and in no distress, which renders her
> subjective complaints markedly less persuasive.

*Id.* (citations to the record omitted).  The ALJ further noted that "objective examinations document subjective tenderness over multiple points, but only mild to moderate" limitations in strength and range of motion, "slightly decreased sensation in the lower extremities, intact reflexes, intact cranial nerves, normal or only intermittently antalgic gait with no need to use an assistive device, normal vascular function in all limbs, and negative straight leg raise testing." *Id.* (citations to the record omitted).  He also reported that Cubano's "mental status examinations reveal no abnormality, with consistently normal sensorium, judgment, insight, memory, mood, and affect, inconsistent with the claimant's allegations of decreased mental functioning." *Id.* at 30–31. (citations to the record omitted). Based on the aforementioned evidence, the ALJ found that the "limitation to the light exertional base is warranted, with further restriction on standing, walking, handling, and fingering," and he did not find "the objective record consistent with greater physical or mental limitations." *Id.* at 31.

The ALJ then considered three medical opinions.  He first considered the opinion of John Simmons M.D., "the State agency medial consultant who reviewed the record in March 2019." *Id.*  Dr. Simmons opined that Cubano "could perform the full range of light exertional activity [sic] except she could only stand and/or

walk for four hours total in an eight-hour workday and only occasionally handle and finger with her bilateral upper extremities." *Id.* (citations to the record omitted).  The ALJ determined that Dr. Simmons' finding was persuasive because it was supported and consistent with the record as a whole. *Id.*

The ALJ also considered the medical opinion of Dr. Aaron Lane, who opined that Cubano had numerous severe functional limitations. *Id.*  The ALJ found Dr. Lane's opinion to be unpersuasive because it was unsupported by and inconsistent with the record evidence. *Id.* at 31–32.

Finally, the ALJ cited to, but did not analyze, the opinion of Dr. Gutierrez. *Id.* at 31 (citing B4F, B12F).  Dr Gutierrez opined that Cubano is medically disabled and cannot work. *Id.* at 423, 624.

At step four of the sequential-evaluation process, the ALJ found that Cubano is unable to do her past relevant work as a packer, which is unskilled, medium exertional work. *Id.* at 32.

At step five of the sequential-evaluation process, considering Cubano's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as bakery worker, conveyor line, and surveillance systems monitor—that exist in significant numbers in the national economy that Cubano could perform. *Id.* at 32–33.

In sum, the ALJ concluded that Cubano was not disabled from October 30, 2018, through the date of his decision on February 6, 2020. *Id.* at 33. Thus, he denied Cubano's claims for disability insurance benefits and supplemental security income. *Id.* at 33–34.

## V. Discussion.

Cubano claims that the ALJ erred and abused his discretion: (1) by "failing to consider the limitations" of her "fibromyalgia, degenerative disorders of the spine, and bilateral carpal tunnel syndrome" in determining her RFC; (2) by failing to consider the limitations regarding her migraine headaches and anxiety in setting forth her RFC; (3) by determining that her migraine headaches and anxiety were not severe impairments; and (4) by "failing to assign proper weight to the opinions of" Dr. Lane and Dr. Gutierrez. *Doc. 16* at 1–2.[6] We will start by addressing the third claim, which involves step-two of the sequential-evaluation process. Next, we will address Cubano's first and second claims. These claims are separate but interconnected; they are both based on the ALJ's handling of Cubano's RFC. As

---

[6] In her brief, Cubano combined the second and third claims. She presented the issue as "[w]hether the [ALJ] erred and abused his discretion in failing to consider the limitations from Plaintiff's diagnosed and treated chronic intractable migraine headaches and anxiety, as the [ALJ] improperly determined these disorders to be non-severe, and as the [ALJ] should have included some non-exertional limitations in Plaintiff's [RFC]." *Doc. 16* at 1–2. For clarity purposes, we split the issue into two separate claims.

such, we will address these claims together.  Finally, we address the claim that the ALJ improperly weighed the opinions of Dr. Lane and Dr. Gutierrez.

### A.  The ALJ did not err in his step-two analysis.

Cubano alleges that the ALJ should have considered her migraine headaches and anxiety to be severe impairments at step-two of the sequential-evaluation process. *Doc. 16* at 19–20.

At step two of the sequential-evaluation process, the ALJ "determines whether the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).  Conversely, an impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" including:

> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2)  Capacities for seeing, hearing, and speaking;
> (3)  Understanding, carrying out, and remembering simple instructions;
> (4)  Use of judgment;

(5)  Responding appropriately to supervision, co-workers and usual work situations; and

(6)  Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(b).  "A 'severe' impairment is distinguished from 'a slight abnormality,' which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007) (citing *Bowen,* 482 U.S. at 149–51).

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  "The burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  In fact, "an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id*. (quoting SSR 85–28, *Titles II and XVI: Medical Impairments that are not Severe*, 1985 WL 56856, at *3 (Jan. 1, 1985)).  "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *Id.*

At step-two of the sequential-evaluation process, the ALJ did not mention Cubano's migraine headaches or anxiety. *Admin. Tr.* at 26.  The ALJ's lack of discussion regarding the alleged impairments is understandable given that Cubano

did not allege disability as a result of migraine headaches or anxiety. *Id.* at 246. We cannot expect the ALJ to classify impairments as severe if the claimant herself did not attribute her disability to such impairments.

And Cubano does not point to evidence that she had migraine headaches or anxiety that significantly limited her ability to do basic work activities. In her brief, Cubano cites to a referral made by Dr. Michael Blessing, DPT, to Wellspan Behavioral Health to address her "chronic pain issues." *Doc. 16* at 20, *Admin. Tr.* at 435. It should be noted that the referral by Dr. Blessing does not diagnose migraine headaches or anxiety as one of Cubano's medical impairments. *Admin. Tr.* at 435. Cubano also cites to medical records in which the physicians at Wellspan Behavioral Health recommended that she follow stress reduction techniques. *Doc. 16* at 20. The record indicates that Cubano should engage in "relaxation breathing and mindfulness" to reduce her stress. *Admin. Tr.* at 486. This evidence, however, does not show that migraine headaches and anxiety were severe impairments for Cubano. In sum, the ALJ did not err in his treatment of Cubano's migraine headaches and anxiety, and his decision is supported by substantial evidence.

Assuming that the ALJ should have considered Cubano's migraine headaches and anxiety to be severe, his error in failing to do so was harmless because he determined that Cubano had numerous other impairments that were

severe, and he proceeded past the step-two analysis. *Id.* at 25–26.  In such circumstances, any error by the ALJ in concluding that a particular impairment was not severe is harmless error. *Salles*, 229 F. App'x at 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").

### B.  The ALJ did not err by failing to impose additional limitations in Cubano's RFC.

As set forth above, Cubano's first two claims concern the ALJ's RFC determination.  She claims that the ALJ erred and abused his discretion in formulating her RFC by failing to include in the RFC limitations relating to her impairments that he considered to be severe—fibromyalgia, degenerative disorders of the spine, and bilateral carpal tunnel syndrome—and by failing to include in the RFC limitations relating to impairments that he did not consider to be severe—migraine headaches and anxiety.  Because both of these contentions concern the RFC, we address them together.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or

her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").  Applying the above standard to the present record, we conclude that the ALJ's RFC determination is supported by substantial evidence.

Cubano contends that as it relates to her fibromyalgia, degenerative disorders of the spine, and bilateral carpal tunnel syndrome, the ALJ failed to properly consider her limitations in crafting the RFC.  And she sets forth a litany of impairments and issues based on her medical records and her testimony, suggesting that the ALJ should have included greater limitations in the RFC. *Id*. at 14–16.  But without a specific argument that the ALJ failed to consider particular

evidence, such a general argument is not persuasive and does not show that the ALJ's decision was not supported by substantial evidence.  "To the extent Plaintiff's brief highlights evidence she contends supports her alleged limitations, the question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings." *Swank v. Saul*, 2021 WL 1143608 at *6 n.5 (W.D. Pa. Mar. 25, 2021).  "Rather, the issue is whether substantial evidence supports the ALJ's findings." *Id.*

Cubano does make several more specific arguments, which we will address. She contends that her medical records and her testimony confirm that she has "hand pain and swelling which cause her to wear splints on both hands." *Doc. 16* at 15.  She also notes that she has trouble gripping and holding things, washing, and at times she needs help getting dressed. *Id.* at 16.  She suggests that the ALJ failed to consider this evidence. *Id.* at 16–17.  But as the above summary of the ALJ's decision shows, the ALJ did consider Cubano's hand pain.  And he did include in the RFC that she was limited to only "occasional handling and fingering bilaterally." *Admin. Tr.* at 28.  The ALJ concluded that Cubano's statements concerning *inter alia* the limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 29. In sum, the ALJ adequately addressed Cubano's hand pain.

21

Cubano also contends that the ALJ failed to consider how her purported need to prop her leg up throughout the day would impact her RFC, and he failed to include limitations in the RFC for her need for unscheduled breaks, her inability to remain on task, her interactions with co-workers and supervisors, and her rate of absenteeism. *Doc. 16* at 17–18.  Again, however, the ALJ did not credit these limitations.  He addressed Cubano's symptoms, contentions, and medical records. And while Cubano points to evidence that she contends supports additional limitations and suggests that the court accept her analysis of the evidence over the analysis set forth by the ALJ, we cannot reweigh the evidence. *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citation omitted)).  And "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).  In sum, the ALJ fulfilled his duty in evaluating Cubano's contentions regarding her symptoms and

22

weighed them against the entire medical record and her daily activities.[7]  In doing

so, the ALJ provided an explanation for affording limited weight to Cubano's

contentions.

Cubano also contends that the ALJ failed to address limitations regarding

her migraine headaches and anxiety, which the ALJ did not consider severe

impairments. *Doc. 16* at 19–20.  Despite Cubano's failure to allege disability due

to her migraine headaches or anxiety, the ALJ nevertheless considered her mental

status in crafting the RFC. *Id.* at 30–31.  As discussed above, the ALJ reported that

Cubano's mental status examination was normal and inconsistent with her

"allegations of decreased mental functioning." *Id.* (citations to the record omitted).

Thus, we conclude that the ALJ's decision regarding Cubano's RFC is supported

by substantial evidence.

### C.  The ALJ's treatment of medical opinions.

Cubano next contends that the ALJ improperly weighed the opinions of Dr.

Lane and Dr. Gutierrez. *Doc. 16* at 2, 20–25.  Before setting forth Dr. Lane's and

Dr. Gutierrez's opinions and the ALJ's treatment of those opinions, it is important

---

[7]  The ALJ points to Cubano's daily activities, which include caring for her four
children, washing dishes, dusting, shopping in stores with others, playing video
games, getting along with authority figures, and ambulating without the use of a
cane or assistive device. *Admin Tr.* at 30.

to note that Cubano's argument rests on a regulatory framework that does not apply to her claim.  Cubano's argument that the ALJ erred is based on regulations that apply to claims filed before March 27, 2017, although her claim was filed on January 3, 2019.

The regulations regarding how the Commissioner considers opinion evidence are different for claims filed before March 27, 2017, on the one hand, and for claims, like Cubano's, filed on or after March 27, 2017, on the other hand. Under the regulations for claims filed before March 27, 2017, the Commissioner assigned weight to medical opinions, but under the regulations for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

 And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive

medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

"Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017). And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Despite Cubano's failure to argue the applicable standard for reviewing the ALJ's evaluation of medical opinions, we will discuss how the ALJ treated the opinions of Dr. Lane and Dr. Gutierrez.

### 1.  Dr. Lane's opinion.

Dr. Lane is Cubano's primary care physician.  The ALJ summarized Dr.

Lane's opinion that Cubano:

> [W]ould "constantly" experience pain or other symptoms severe
> enough to interfere with the attention and concentration needed to
> perform even simple tasks; would be incapable of even "low stress"
> jobs; could walk only one block at one time, stand only fifteen
> minutes at one time, and stand and/or walk less than two hours total in
> an eight-hour workday; could sit only fifteen minutes at one time and
> less than two hours total in an eight-hour workday; would require
> periods of walking around every five minutes for five minutes at a
> time; would require the option to change positions at will; would
> require unscheduled breaks of five minutes every fifteen minutes;
> could lift and carry less than ten pounds and only rarely; could rarely
> turn her head, look up, or hold her head static and only occasionally
> look down; could never climb ladders, rarely twist, stoop, or crouch,
> and only occasionally climb stairs; could use her bilateral hands for
> gross manipulation and reaching only 10 percent of the day and for
> fine manipulation only 5 percent of the day; was likely to be absent
> from work eight days per month; was likely to be off-task for 20
> percent or more of the workday; and that this degree of limitation has
> been present for the past five years.

*Admin. Tr.* at 31. (citations to the record omitted).  The ALJ found Dr. Lane's

opinion to be unpersuasive. *Id.* at 31–32.

And the ALJ sufficiently addressed both the supportability and consistency

of Dr. Lane's opinion.  As to supportability, after setting forth Dr. Lane's findings,

the ALJ found his opinion to be "utterly unsupported" because (1) Dr. Lane drafted

his opinion after meeting with Cubano only once, and (2) Dr. Lane did not provide

any medical evidence or reports to support his opinions. *Id.* (citations to the record omitted).

As to consistency, asserting that the severity of the limitations that Dr. Lane set forth is not supported by the longitudinal record, the ALJ notes that Dr. Lane's "opinion is not consistent with the other medical and non-medical evidence of the record," which "documents only moderately severe underlying disorders, conservative treatment, and modest findings on examination, markedly less than one would expect if Dr. Lane's dramatic limitations were truly present." *Id.* at 32. (citations to the record omitted).

Because the ALJ adequately addressed both the supportability and consistency of Dr. Lane's opinion, the ALJ did not err in his treatment of Dr. Lane's opinion.

### 2.  Dr. Gutierrez's opinion.

Cubano also suggests that the ALJ failed to properly consider the opinion of Dr. Gutierrez.  Dr. Gutierrez opined that Cubano was unable to work and should pursue medical disability. *Id.* at 423, 624.

Dr. Gutierrez wrote a letter addressed to Cubano on November 19, 2018, that stated:

> As you know, you have been under my care for a chronic pain
> syndrome from fibromyalgia and lumbar spinal stenosis.  In addition,
> you have iron deficiency, vitamin D deficiency, and a fatty liver.
>
> You have tried a variety of medications for this pain including
> tramadol, duloxetine, gabapentin, venlafaxine, meloxicam, and
> cyclobenzaprine, which have not helped or have not been tolerated.
> In addition, you have tried physical therapy and have gone to pain
> specialists including Dr. Lorenzo and Dr. Knipe.  Injections into the
> back have not helped your back pain.
>
> Given your severe chronic daily pain, I do not think that you are able
> to be employed and I suggest that you pursue medical disability.
>
> You have been a compliant patient, and you have been open to my
> suggestions, and you have been to the referrals that I have asked.

*Id.* at 432.  Dr. Gutierrez wrote another letter with similar contents to Cubano on

November 13, 2019. *Id.* at 624.  That letter stated:

> As you know, you are under my care for a chronic pain from
> fibromyalgia syndrome.  You also have lumbar spine spondylosis,
> vitamin D deficiency, suspected carpal tunnel syndrome, iron
> deficiency, and fatty liver.
>
> You have diffuse chronic widespread pain not responding to
> medications.  These include tramadol, duloxetine, gabapentin,
> venlafaxine, meloxicam, amitriptyline, or cyclobenzaprine.  You are
> currently on medical marijuana.
>
> It is my opinion that you have pain causing impairments with inability
> to work.  I do believe you should pursue disability.

*Id.*

Contrary to Cubano's contention, the ALJ did consider Dr. Gutierrez's

opinion. *See id.* at 31 (citing B4F, B12F).  Under the new regulations, the ALJ is

not required to "provide any analysis" on "[s]tatements on issues reserved to the

Commissioner[,]" such as whether the claimant is disabled or able to work. 20

C.F.R. §§ 404.1520b(c), 416.920b(c).  The statements provided by Dr. Gutierrez

which opine that Cubano is disabled and unable to work are determinations that are

reserved for the ALJ.  As such, the ALJ was not required to analyze Dr.

Gutierrez's letters because those letters are not medical opinions.  "A medical

opinion is a statement from a medical source about what [the claimant] can still do

despite [the claimant's] impairment(s) and whether [the claimant] [has] one or

more impairment-related limitations or restrictions in the following abilities":

ability to perform physical demands of work activities, including sitting, standing

walking, and lifting; ability to perform mental demands of work activities,

including understanding, concentrating, and remembering; ability to see, hear, or

use other senses; and ability to adapt to environmental conditions. 20 C.F.R §§

404.1513(a)(2), 416.913(a)(2).  A medical report that "fails to provide a function-

by-function analysis and does not opine about what [the claimant] can still do

despite [his or her] impairment" does not constitute a medical opinion. *Knittle v.*

*Kijakazi*, 2021 U.S. Dist. LEXIS 239869, at *16–17 (M.D. Pa. Dec. 15, 2021).

Although Dr. Gutierrez's letters provide that Cubano is disabled and unable to

work, Dr. Gutierrez does not discuss what Cubano can still do despite her

limitations, nor does he provide a function-by-function analysis of her

impairments. *Admin. Tr.* at 423, 624.  Accordingly, his letters are not medical

opinions.  Thus, Cubano does not set forth a basis for the court to conclude that the ALJ erred in this treatment of those letters.

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and judgment will be entered in favor of the Commissioner.  An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge

31